ROBERTSON, Presiding Judge.
In 1987 the City of Hoover elected to form the Hoover City Board of Education (Board) to administer and supervise the city’s public schools. The Board agreed to appoint Dr. C. Robert Mitchell as superintendent. Under the terms of the agreement, Mitchell’s term was to begin on January 16,1988, and was to end on January 15, 1991, with an annual salary of $60,000, plus other benefits. On February 13, 1989, the Board increased Mitchell’s salary to $64,-500. On that same date the Board and Mitchell entered into a new agreement which, inter alia, extended Mitchell’s term as superintendent until June 30, 1992. The Board later amended the second agreement to purchase a retirement plan for Mitchell and acknowledged that Mitchell already had an automatic extension of his employment as superintendent until June 30, 1993.
On March 5,1991, the Board and Mitchell entered into a new employment contract. This agreement expressly superseded all previous agreements. Under the terms of this contract, Mitchell’s term of employ *395 ment as superintendent was for five years, from March 5, 1991, to March 4, 1996. This agreement set Mitchell’s annual salary at $71,740, plus any percentage increase approved by the Alabama Legislature for all teachers in Alabama, and $350 a month in travel expenses. This agreement also contained the unilateral right of the Board to terminate Mitchell.
On April 29, 1991, the Board approved a resolution to unilaterally terminate Mitchell’s employment effective April 30, 1991. On this same date, Mitchell and the Board entered into an agreement entitled “Acknowledgment and Mutual Release” which acknowledged that the Board was exercising its authority under § IX, paragraph B, of the March 5, 1991, employment agreement to unilaterally terminate Mitchell as superintendent. Under this release agreement the Board agreed to pay to Mitchell a total of $419,119.62. Of this amount, $392,066.47 represented severance pay and $27,053.15 represented retirement benefits.
George Townsend, Shirley Townsend, James Wilder, Charles Wilson, and Jane Wilson (hereafter collectively referred to as “Townsend”), as residents and taxpayers of the City of Hoover, filed suit against the Board, the Board members in their official capacity, and against Mitchell in his individual capacity. Townsend alleged that the Board violated Article IV, § 68 and Article XVII, § 281 of the Alabama Constitution, §§ 16-21-1, 16-12-20 and 41-16-57(e), Code 1975, and the principles of equity and fair play by passing a resolution agreeing to pay Mitchell in excess of $300,000 (the actual amount being challenged is $392,-066.47) after his employment as superintendent was terminated by the Board. Townsend sought preliminary and permanent injunctions to enjoin the Board from paying Mitchell any further sums of money.
The trial court conducted a hearing on whether to grant Townsend’s request for a preliminary injunction. At this hearing, Townsend contended that the Board lacked the authority to contractually bind itself to pay Mitchell after his employment as superintendent had been terminated. Townsend also maintained that Mitchell served at the pleasure of the Board, and, therefore, his employment could be terminated at any time. The trial court denied Townsend’s request for a preliminary injunction. In its order, the trial court held that the March 5, 1991, agreement, and the subsequent agreement to pay Mitchell the $392,-066.47 in controversy, did not violate Article IV, § 68, or Article XVII, § 281 of the Alabama Constitution, or §§ 16-21-1, 16-12-20, or 41-16~57(e), Code 1975.
Townsend appealed the denial of the request for a preliminary injunction to our supreme court, and this case was subsequently transferred to this court on jurisdictional grounds. The trial court entered a final judgment denying Townsend’s request for a permanent injunction on December 4, 1991, and an amended appeal was filed from that final judgment.
The following issues are before this court on appeal: (1) whether the Board violated Article IV, § 68 of the Alabama Constitution; (2) whether the Board violated Article XVII, § 281 of the Alabama Constitution; (3) whether Mitchell’s appointment as superintendent pursuant to § 16-12-1 constituted an employment-at-will; (4) whether an employment agreement in excess of three years is void under § 41-16-57, Code 1975; and (5) whether Mitchell was a tenured employee.
I
Article IV, § 68, of the Alabama Constitution of 1901, provides in part that:
“The legislature shall have no power to grant or to authorize or require any county or municipal authority to grant, nor shall any county or municipal authority have power to grant any extra compensation, fee, or allowance to any public officer, servant, or employee, agent or contractor, after service shall have been rendered....”
We recognize that our supreme court has held, for purposes of sovereign immunity in tort actions, that county and municipal boards of education are agencies of the state when they are executing a state function, namely education. Hutt v. *396 Etowah County Board of Education, 454 So.2d 973 (Ala.1984).
However, three years after the Hutt decision, in Kohen v. Board of School Com’rs of Mobile Cty., 510 So.2d 216 (Ala.1987), our supreme court chose not to directly address the issue of whether the board of education was a county or municipal authority for the purposes of § 68. Justice Maddox wrote that “[h]aving found the policy ... to be constitutional, we need not address the plaintiffs’ argument ... that the Board is not a county or municipal authority for the purposes of § 68.” Ko-hen at 219.
In addressing “whether the severance pay agreement violates Article IV, § 68, of the Alabama Constitution,” the trial court held in part that:
“Even if § 68 applied to municipal boards of education, it would not prohibit a board of education from entering into a new contract with its superintendent for a term which would include the remainder of an existing term under a prior contract. In Kohen v. Bd. of School Comm’rs of Mobile City, 510 So.2d 216 (Ala.1987), the Board on October 12, 1983, approved of a policy authorizing payment of $100 to all employees who achieved perfect attendance for the 1983-84 school year. Two weeks later, the Board voted to change that policy to provide instead of the $100 a bonus of $20 for each unused sick leave day, up to a maximum of nine unused days per year.
“The Board subsequently in March 1984, received a letter from its attorney suggesting that the cash incentive award would be unconstitutional under § 68. When eligible employees then requested pay for the unused sick leave days, the Board replied that the plan was unconstitutional. Kohen and other employees then filed suit to compel the Board to make payment pursuant to its stated sick leave policy. The trial court granted summary judgment in favor of the Board. On appeal the Supreme Court of Alabama reversed. It was argued to the supreme court that the sick leave policy was unconstitutional and in violation of § 68 of the Alabama Constitution because sick leave policy provided additional compensation to employees after services had been rendered. The Board argued that each employee began the school year with a contract which stated his salary and that state law provided a specific number of sick leave days and that any unused days could be retained for future use. The supreme court rejected this argument. It found that § 68 contained no prohibition against the granting of additional compensation in exchange for additional consideration given by the employee. The supreme court stated:
“ ‘... Here, the school employees were entitled to the use of their sick leave days. Their forbearance in reliance on the promise of the Board constituted adequate consideration to support a contract for additional compensation to be paid by the Board.’
“The supreme court also rejected the argument that the payment of the bonus at the end of the school year was unconstitutional as being additional payment after services had been rendered. The court found that the payment did not differ from payment of a salary at the end of the month in which the labor was done. The supreme court did conclude that the Board could not authorize payment to employees for unused sick leave days accumulated by the employee before the Board put its plan into effect. But as so limited, the supreme court concluded that the sick leave bonus plan adopted by the Board was constitutional and not violative of § 68.
“In the present case, the new employment contract entered into by the Board with Mitchell on March 5,1991, was for a different term of employment than the prior contracts. Mitchell’s agreement to remain superintendent for the additional period contemplated by the March 5, 1991, contract was adequate consideration on his part to make the contract a valid one and not in violation of § 68. The contract did not attempt to provide Mitchell with additional compensation for *397 the period during which he had already served as superintendent. Consequently, the contract dated March 5, 1991, was not a violation of § 68 of the Alabama Constitution.
“The Severance Pay Agreement was a mutual agreement between the Board and Mitchell agreeing to terminate the March 5, 1991, agreement. It is the Board’s position that it did not terminate Mitchell for cause but by its unilateral action. Consequently, it was within the board’s authority to negotiate with Mitchell concerning the terms under which the March 5, 1991, contract could be terminated with Mitchell’s agreement.
“It is this court’s conclusion that the March 5, 1991, contract and the subsequent Severance Pay Agreement do not violate Article IV, § 68, of the Alabama Constitution.” (Emphasis in original.)
We affirm the trial court on this issue.
II
Article XVII, § 281 of the Constitution of Alabama of 1901, provides that:
“The salary, fees, or compensation of any officer holding any civil office of profit under this state or any county or municipality thereof, shall not be increased or diminished during the term for which he shall have been elected or appointed.”
Our supreme court declined to extend the term “officer” to encompass state superintendents in Britnell v. Ala. State Board of Education, 874 So.2d 282 (Ala.1979). In Britnell, the janitorial staff, in their capacity as taxpayers, claimed the State Board of Education acted in an unconstitutional manner under § 281 by authorizing a $4,000 pay increase for the state superintendent. Our supreme court held that
“[a]ll authority is vested in the Board of Education and not in the superintendent. Any authority the superintendent has is given to him by the Board of Education. Thus, the superintendent is controlled by and is an officer of the Board of Education, and is not an officer as contemplated by § 281.”
Britnell at 286.
Our supreme court reaffirmed the reasoning of Britnell with its decision in Edmonds v. Bronner, 547 So.2d 1172 (Ala.1989). In Edmonds, taxpayers filed suit against the secretary/treasurer of the Employees’ Retirement System of Alabama, alleging that the participation of some individuals violated Article IV, § 98, of the Alabama Constitution of 1901. Relying on Britnell, our supreme court
“concluded that all authority is vested in the county board of education (subject to the supervision by the State Board of Education) and not in the county superintendent. The county superintendent is controlled by and is an officer of the county board of education and, therefore, is not an officer as contemplated by § 98.”
Edmonds at 1176. Although Edmonds and Britnell regard different sections of the Alabama Constitution, the reasoning used by our supreme court in declining to extend the term “officer” to include state or county superintendents is consistent.
By following the reasoning of our supreme court in Britnell and Edmonds, a city superintendent of education is not an “officer” as intended by Article XVII, § 281 of the Alabama Constitution. Therefore, the Board did not violate this constitutional provision.
Ill
Townsend’s main argument is that Mitchell’s employment pursuant to § 16-12-1 constituted an employment-at-will. Section 16-12-1, Code 1975, provides that:
“The city board of education shall appoint a city superintendent of schools to hold office at the pleasure of the board. The city superintendent of schools shall receive such compensation as the city board of education shall direct. The city board of education may remove the city superintendent of schools for incompetency, immorality, misconduct in office, willful neglect of duty or when, in the *398 opinion of the board, the best interests of the schools require it.”
In addressing “whether the March 5, 1991, employment agreement violated § 16-12-1,” the trial court’s order stated in part the following:
“According to Townsend, the Board had no authority to contract with Mitchell for his employment as superintendent for a term of five years. Since Mitchell was at all times an at-will employee, Townsend says that the Severance Pay Agreement was without consideration and invalid, since Mitchell’s employment was by statute subject to termination by the Board without cause at any time.
“The difficulty with this argument is that if the Board had the right and authority under § 16-12-1 to remove the superintendent at any time without cause, then there was no need for the third sentence of § 16-12-1, which sets out the grounds for removal of the superintendent with cause. If the superintendent is an employee at will, the sentence in § 16-12-1 stating grounds for his removal would have no application since under Townsend’s interpretation, the board does not need to have grounds for removal.
“Townsend says that the third sentence of § 16-12-1 also provides that the Board may remove the superintendent when, in the opinion of the Board, the best interest of the schools require it. Here again, if the Board is free to remove the superintendent with or without cause, it would not be necessary for the Board to reach the opinion that the best interest of the schools require the superintendent’s removal.
“The removal of the superintendent by the Board, ‘when, in the opinion of the Board, the best interests of the schools require it,’ still contemplates removal of the superintendent for cause. This phrase is a catch-all phrase having in mind any number of possible grounds for removal related to the inability of the superintendent to carry out his duties but not specifically addressed in the statute.
“For example, a superintendent might not be incompetent, immoral, or guilty of willful neglect of duty but nevertheless not be fulfilling the duties of his employment in a satisfactory manner. The third sentence of § 16-12-1 contemplates the removal of the superintendent by the Board for cause.
“The words, ‘hold office at the pleasure of the Board,’ then mean that the Board may employ the superintendent for a period of time agreed upon by the Board and its appointee, subject to reasonable limits.
“Under § 16-9-1, Alabama Code 1975, the legislature authorized the county board of education of each county to appoint a superintendent for a term of ‘from two to four years from the first day of July next succeeding his employment.’
“Townsend argues that by failing to include a provision in § 16-12-1 providing for employment by the city board for a term, the legislature intended the city superintendent to be an at-will employee.
“It could as well be argued that by omitting any reference to the period of time for which the city board may employ a superintendent, it was the intention of the legislature to allow city boards of education wider discretion in fixing the terms of office for their superintendents.
“Townsend refers also in its brief to the case of Jensen v. Independent Consolidated School District No. 85, 160 Minn. 233, 199 N.W. 911 (1924). In Jensen, the school district contracted for the employment of a superintendent named Pinney for thirty-six months (three years), but then terminated his employment after Pinney had been employed only seven months. The Supreme Court of Minnesota concluded that the three-year contract of employment with the superintendent was invalid because the Minnesota statute provided in part:
“ ‘They may also elect a superintendent who may hold office during the pleasure of the Board. He shall be ex officio a member of the Board, but not *399 entitled to vote therein. G.S., 1913/ Section 2734,
“The supreme court concluded that the language of the statute ‘during the pleasure of the Board/ was susceptible of but one meaning, and that is that the Board could discharge the superintendent whenever in its discretion it desired to do so. It held that the school board cannot by contract deprive itself of the right given it by statute to release the superintendent at its pleasure, since the latter was a public right and existed for public purpose. However, the Minnesota statute did not set out grounds for removal for cause of the superintendent by the Board, as does § 16-12-1. This case serves as an example for the point that where the statute provides for the removal of the superintendent by the Board summarily and without cause, then there is no need to include within the statute, specific grounds for which he Board may remove the superintendent for cause.
“The Supreme Court of Minnesota noted that to hold that the contract in question was binding for the fixed term would allow the school board to deprive itself and its successors of governmental powers which had been granted to it by the legislature for public purposes. On the other hand, it could be argued that it might not be possible to attract qualified persons for the position if there was no job security offered with the appointment.
“This court concludes that the March 5, 1991, employment contract entered into by the Board with Mitchell did not violate § 16-12-1, Alabama Code 1975.” (Emphasis in original.)
We affirm the trial court on this issue also.
IV
Townsend argues that the Board’s employment contract with Mitchell, if not considered void under § 16-12-1, was a “public contract,” and such a contract in excess of three years is void pursuant to § 41-16-57(e), Code 1975, which provides, in part, that:
“[cjontracts for the purchase of personal property or contractual services shall be let for periods not greater than three years.”
We find this section inapplicable to this case in light of § 41-16-51(a)(3), Code 1975, which provides that this Article shall not apply to:
“teachers ... or other individuals possessing a high degree of professional skill where the personality of the individual plays a decisive part.”
As stated by the trial court, it is obvious that employments of superintendents of education are not subject to § 41-16-57(e).
V
While the final issue is not dispositive of this appeal, we find the trial court’s comments concerning this issue noteworthy. In addressing “whether Mitchell has tenure within the meaning of the teacher tenure law” the trial court’s order stated in part that:
“As an additional argument that Mitchell was not an at-will employee, his counsel argues that Mitchell acquired tenure under the Alabama Teacher Tenure Law (§ 16-24-1, et seq., Alabama Code 1975). Therefore, there was consideration flowing from Mitchell in connection with his execution of the Severance Pay Agreement. In support of this argument, counsel for Mitchell refers to the decision of the Supreme Court of Alabama in Ex parte Weaver, 559 So.2d 178 (Ala.1989).
“In that case, Letha G. Weaver was employed as a teacher by the Winston County Board of Education from 1961 to 1981, a period of twenty years. She obtained tenure as a teacher. In 1980, she campaigned for and was elected Superintendent of Education of Winston County and served in that capacity from July 1, 1981, to June 1985. In June 1985, Weaver applied for a position with the Board’s school system, but she was not hired. She then appealed to the State Tenure Commission, which affirmed the decision *400 of the Board of Education finding that she had relinquished her tenured status when she voluntarily ran for an elected public office.
“On appeal to the Supreme Court of Alabama, it concluded, however, that Weaver became a ‘supervisor’ when she assumed the position of Superintendent of Education within the meaning of ‘supervisor’ as that word is used in § 16-24-1, defining ‘teacher’ for purposes of the Teacher Tenure Act. The supreme court concluded that the general definition of ‘supervisor’ fit the job description for the position held by Weaver as the County Superintendent of Education.
“While the supreme court opinion seems to hold generally that all superintendents of education now may attain tenure under the Teacher Tenure Act, this court questions whether the supreme court was intending to go that far. Weaver had been a teacher for twenty years before she was elected Superintendent of Education, and it could be argued in Weaver that Weaver should not be caused to lose her tenure because she was elected to the position of superintendent. It is difficult to believe that the Teacher Tenure Act was ever intended to provide tenure generally for all superintendents of education.
“In light of this court’s decision on the other issues presented, it is not necessary to reach the issue here whether Mitchell had achieved tenure under the Teacher Tenure Act solely by his employment as superintendent.”
The judgment of the trial court is affirmed.
AFFIRMED.
THIGPEN and RUSSELL, JJ„ concur.